FTB:RWN
F. #2025R00133

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
*    SEPTEMBER 2, 2025    *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

AARON WARREN,
TARA DILDY,
DESTINY MENDEZ and
CHRISTOPHER WALKER,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**I N D I C T M E N T**

Cr. No. __25-CR-271__

(T. 18, U.S.C., §§ 982(a)(1),
982(a)(2)(A), 982(b)(1), 1344, 1349,
1957, 2 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p))

Judge Natasha C. Merle

Magistrate Judge James R. Cho

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and Relevant Entities

        1.    The defendant AARON WARREN was a resident of Queens County, New York. WARREN was employed by the New York City Department of Corrections as a correction officer at the Rikers Island Correctional Complex ("Rikers Island") from approximately June 2017 to August 2023.

        2.    The defendant TARA DILDY was a resident of Queens County, New York. DILDY was employed by the New York City Department of Corrections as a correction officer at Rikers Island from approximately January 2018 to January 2024. DILDY was in a romantic relationship with the defendant AARON WARREN beginning in 2017 or earlier.

3. The defendant DESTINY MENDEZ was a resident of Kings County, New York. From approximately August 2024 to December 2024, MENDEZ was in regular communication with the defendant AARON WARREN.

4. The defendant CHRISTOPHER WALKER was a resident of Queens County, New York. WALKER was employed by the New York City Department of Corrections as a correction officer at Rikers Island beginning in approximately June 2017.

5. Bank #1, Bank #2 and Bank #3 (collectively, the "Banks"), the identities of which are known to the Grand Jury, were depository institutions the deposits of which were insured by the Federal Deposit Insurance Corporation.

6. Credit Union #1 and Credit Union #2 (collectively, the "Credit Unions"), the identities of which are known to the Grand Jury, were financial institutions the accounts of which were insured by the National Credit Union Share Insurance Fund.

7. Investment Company #1, Investment Company #2 and Investment Company #3 (collectively, the "Investment Companies"), the identities of which are known to the Grand Jury, were investment companies that offered brokerage accounts to individual customers. Each of the Investment Companies offered a check-deposit feature that allowed customers to deposit checks into their brokerage accounts.

8. Company #1, Company #2, Company #3, Company #4 and Company #5 (collectively, the "Companies"), the identities of which are known to the Grand Jury, were entities that made payments by check for various purposes. Company #1 was a shipping company located in Union City, California. Company #2 was a plastic materials supplier located in Santa Fe Springs, California. Company #3 was a bank with branches in the Eastern

3

District of New York and elsewhere.   Company #4 was an insurance claims business located in New York, New York.   Company #5 was a construction company located in Red Bay, Alabama.

II.    The Falsified Checks Scheme

9.    Between approximately July 2023 and January 2025, the defendants AARON WARREN, TARA DILDY, DESTINY MENDEZ, CHRISTOPHER WALKER and others engaged in a fraudulent scheme to deposit more than $2.5 million worth of falsified checks purportedly made out by the Companies, the City of New York and other entities into accounts controlled by the defendants at banks, credit unions and investment companies including the Banks, Credit Unions and Investment Companies.   Where the falsified checks cleared and money was successfully deposited into these accounts, the defendants then withdrew or transferred the fraudulently obtained money from their accounts before the fraud was detected.

A.    July 18, 2023: Deposit of Falsified Check from Company #1

10.    On approximately June 21, 2023, a check bearing check number 128187 in the amount of $119,012.50 was made out by Company #1 to a payee located in Brooklyn, New York.   The name and address of the payee on this check were subsequently falsified to be the name and address of the defendant CHRISTOPHER WALKER.   On approximately July 18, 2023, this falsified check was deposited into an account at Bank #1 with a number ending in 2163, which belonged to WALKER.

11.    Thereafter, between approximately July 18, 2023 and August 7, 2023, the defendant CHRISTOPHER WALKER withdrew more than $116,000 in cash from the account.

B.    January to February 2024: Deposits of Falsified Checks from Company #2

12.    On approximately January 19, 2024, what appeared to be a check made out by Company #2 bearing check number 42110, payable to the defendant TARA DILDY in the

4

amount of $108,208.22, was deposited into an account at Bank #1 with a number ending in 6255, which belonged to DILDY.   In fact, Company #2 never made out a check bearing check number 42110.

13.    On approximately February 2, 2024, what appeared to be a check made out by Company #2 bearing check number 42121, payable to the defendant TARA DILDY in the amount of $12,180.45, was deposited into the same account belonging to DILDY.   In fact, Company #2 never made out a check bearing check number 42121.

14.    Between approximately January 30, 2024 and February 13, 2024, the defendant TARA DILDY withdrew approximately $117,340 in cash from this same account, emptying it.

C.    June 2024: Deposits of Falsified Cashier's Checks from Company #3

15.    Between approximately February 29, 2024 and April 12, 2024, the defendants AARON WARREN, TARA DILDY and CHRISTOPHER WALKER each opened a business-deposit account at Bank #2 at the same branch location in Nassau County, New York. Falsified checks were then fraudulently presented for deposit into WALKER's and DILDY's business-deposit accounts and into a separate account in WARREN's name at Bank #2.

16.    On approximately April 12, 2024, the defendant CHRISTOPHER WALKER opened a business-deposit account at Bank #2 with a number ending in 0044. WALKER provided the name of the business as "Christopher A.D. Walker" and described his business as a brokerage for selling car parts and used cars with an annual gross revenue of $50,000 and an annual net profit of $5,000.

17.    On the same day, at the same branch location, the defendant TARA DILDY also opened a business-deposit account at Bank #2, with a number ending in 0087.

5

DILDY provided the name of the business as "Tara E Dildy" and claimed her business sold hair-dressing and beautification services.    Like WALKER, above, DILDY indicated that her business had an annual gross revenue of $50,000 and an annual net profit of $5,000.

18.    On approximately June 5, 2024, the defendant AARON WARREN purchased a cashier's check bearing serial number 9106686588 from Company #3, made payable to "Joe Paul" in the amount of $50.00.    The name of the payee and amount of this check were subsequently falsified to be CHRISTOPHER WALKER and $96,142.27, respectively.

19.    Between approximately June 24, 2024 and June 28, 2024 the defendants AARON WARREN, TARA DILDY and CHRISTOPHER WALKER each presented a falsified cashier's check purportedly issued by Company #3 for deposit into their accounts at Bank #2. Specifically:

(a)    on approximately June 24, 2024, what appeared to be a cashier's check issued by Company #3 bearing serial number 9106686588 (the check for $50.00 made payable to "Joe Paul" described in paragraph 18, above), now made payable to CHRISTOPHER WALKER in the amount of $96,142.27, was presented for deposit into WALKER's business-deposit account at Bank #2;

(b)    on approximately June 25, 2024, what appeared to be a cashier's check issued by Company #3 bearing serial number 9106686728, made payable to TARA DILDY in the amount of $96,147.22, was presented for deposit into DILDY's business-deposit account at Bank #2; and

(c)    on approximately June 28, 2024, what appeared to be a cashier's check issued by Company #3 bearing serial number 9106686889, made payable to AARON WARREN, was presented for deposit into an account at Bank #2 in WARREN's name with a

number ending in 5915.   While the numerical amount on this check was $28,047.00, the word written-out amount was "ninety six thousand one hundred forty seven and 22 cents"—the same amount as the falsified check deposited into DILDY's business-deposit account, as described immediately above.   Each of these deposits was rejected.

D.    July 2024 to October 2024: Deposits of Falsified Checks from Company #4

20.    Between July 2024 and October 2024, the defendants AARON WARREN and CHRISTOPHER WALKER attempted to deposit at least five different falsified checks purporting to be made out by Company #4.

21.    On approximately April 11, 2024, a check bearing check number 767061 in the amount of $75,000.00 was made out by Company #4 to a payee located in Brooklyn, New York.   The name and address of the payee on this check were subsequently falsified to be the name and address of the defendant CHRISTOPHER WALKER.   On approximately July 17, 2024, this falsified check was deposited into an account at Credit Union #1 with a number ending in 9327, which belonged to WALKER.   Following this deposit, on approximately July 26, 2024, (a) $30,500 was wired from this account to an account at Credit Union #2 with a number ending in 1341, which also belonged to WALKER, and (b) an additional $37,400 was wired from the account to an account at Bank #3 with a number ending in 1115, which belonged to the defendant AARON WARREN.

22.    Between approximately April 15, 2024 and April 26, 2024, at least four more checks were made out by Company #4 to payees in amounts of less than $1000.   The names of the payees were subsequently falsified to be the name of the defendant CHRISTOPHER WALKER or the name of the defendant AARON WARREN, and the amounts of each of these checks were falsified to be $75,000.   Between approximately July 26, 2024 and

7

August 6, 2024, these falsified checks were presented for deposit into accounts that belonged to WALKER and WARREN at Investment Company #1, Credit Union #1 and Credit Union #2. Each of these deposits was rejected.

E.      August to September 2024: Deposits of Falsified Checks from Company #5

23.      Between approximately August 5, 2024 and September 6, 2024, the defendants AARON WARREN, DESTINY MENDEZ and CHRISTOPHER WALKER attempted to deposit falsified checks purportedly made out by Company #5 into bank accounts that they controlled.

24.      Specifically, on approximately August 5, 2024, what appeared to be a check made out by Company #5 bearing check number 706724, payable to the defendant CHRISTOPHER WALKER in the amount of $86,788.22, was presented for deposit into an account at Investment Company #1 with a number ending in 0795, which belonged to WALKER.   In fact, Company #5 never made out a check bearing check number 706724, and this deposit was rejected.

25.      On approximately August 7, 2024, what appeared to be a check made out by Company #5 bearing check number 706707, payable to the defendant AARON WARREN in the amount of $86,788.22, was presented for deposit into an account at Investment Company #2 ending in 5898, which belonged to WARREN.   In fact, Company #5 never made out a check bearing check number 706707, and this deposit was rejected.

26.      On approximately August 24, 2024, what appeared to be a check made out by Company #5 bearing check number 706707—the same false check number previously deposited by the defendant AARON WARREN—but now made payable to the defendant

CHRISTOPHER WALKER in the same amount of $86,788.22, was presented for deposit into an account belonging to WALKER at Investment Company #3. This deposit was rejected.

27. On approximately August 26, 2024, what appeared to be a check made out by Company #5 bearing check number 706707—the same false check number previously presented for deposit into accounts belonging to the defendants AARON WARREN and CHRISTOPHER WALKER as referenced in paragraphs 25 and 26, above—but now made payable to WALKER in the amount of $78,855.42, was deposited into an account at Investment Company #1 with a number ending in 4002, which belonged to WALKER. Unlike the two previous attempts, this deposit was accepted and money was credited to WALKER's account. Thereafter, between approximately September 4, 2024 and September 5, 2024, WALKER transferred $78,900 from this account to a separate account that belonged to him, thereby emptying the account with a number ending in 4002.

28. On approximately August 14, 2024, what appeared to be a check made out by Company #5 bearing check number 706729, payable to the defendant AARON WARREN in the amount of $78,855.42—the same amount as the false check successfully deposited by WALKER as referenced in paragraph 27, above—was presented for deposit into the WARREN account with a number ending in 5898 at Investment Company #2. In fact, Company #5 never made out a check bearing check number 706729, and this deposit was rejected.

29. Between approximately September 4, 2024 and September 6, 2024, the defendant DESTINY MENDEZ communicated with the defendant AARON WARREN by telephone at least six times. On approximately September 6, 2024, what appeared to be a check made out by Company #5 bearing check number 706926, payable to MENDEZ, also in the amount of $78,855.42, was presented for deposit into an account at Bank #1 with a number

ending in 5696, which belonged to MENDEZ.   In fact, Company #5 never made out a check

bearing check number 706926, and this deposit was rejected.

   F.  October 2024: Deposits of Falsified Checks from the City of New York

   30.  On approximately December 28, 2023, a check bearing check number

0301254920 in the amount of $94.44 was made out by the City of New York to a payee located

in Forest Hills, New York.   The name of the payee on this check was subsequently falsified to

be the name of the defendant TARA DILDY, and the amount was falsified to be $23,331.00.

On approximately October 1, 2024, this falsified check was presented for deposit into an account

at Investment Company #3 with a number ending in 1049, which belonged to DILDY.   This

deposit was rejected.

   31.  On approximately September 13, 2024, a check bearing check number

57345213 in the amount of $660.68 was made out by the City of New York to a payee who was

an employee of the City of New York.   This check bore a reference number corresponding to

the payee's employee-identification number, which is a unique number assigned to each

employee of the City of New York.   The name of the payee on the check was subsequently

falsified to be the name of the defendant DESTINY MENDEZ, the amount was falsified to be

$18,490.02, and the reference number was falsified to be the employee-identification number of

the defendant AARON WARREN.   On approximately October 1, 2024 and October 2, 2024,

MENDEZ communicated with WARREN by telephone at least four times.   On approximately

October 2, 2024, this falsified check was presented for deposit into an account at Investment

Company #3 with a number ending in 1788, which belonged to MENDEZ.   This deposit was

rejected.

## COUNT ONE
(Conspiracy to Commit Wire Fraud and Bank Fraud)

32.    The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

33.    In or about and between July 2023 and October 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AARON WARREN, TARA DILDY and CHRISTOPHER WALKER, together with others, did knowingly and intentionally conspire to:

(a)    devise a scheme and artifice to defraud victims including Bank #1, Bank #2, Bank #3, Investment Company #1, Investment Company #2, Investment Company #3, Credit Union #1 and Credit Union #2, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343; and

(b)    execute a scheme and artifice to defraud Bank #1, Bank #2, and Bank #3, financial institutions the deposits of which were insured by the Federal Deposit Insurance Corporation; and Credit Union #1 and Credit Union #2, financial institutions the accounts of which were insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits and other property owned by and under the custody and control of Bank #1, Bank #2, Bank #3, Credit Union #1 and Credit Union #2 by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO THROUGH SEVEN
(Bank Fraud)

34.     The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

35.     On or about and between the dates set forth below, such dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants set forth below, together with others, did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud the financial institutions set forth below, the deposits of which were insured by the Federal Deposit Insurance Corporation and the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits and other property owned by and under the custody and control of said financial institutions by means of materially false and fraudulent pretenses, representations and promises.

| Count | Approximate Dates | Financial Institution | Defendant(s) | Amount |
|---|---|---|---|---|
| TWO | July 18, 2023 through August 7, 2023 | Bank #1 | CHRISTOPHER WALKER | $119,012.50 |
| THREE | January 19, 2024 through February 13, 2024 | Bank #1 | TARA DILDY | $120,388.67 |
| FOUR | February 29, 2024 through June 28, 2024 | Bank #2 | CHRISTOPHER WALKER, AARON WARREN and TARA DILDY | $220,336.49 |
| FIVE | July 17, 2024 through August 1, 2024 | Credit Union #1 | CHRISTOPHER WALKER and AARON WARREN | $150,000.00 |
| SIX | August 6, 2024 | Credit Union #2 | AARON WARREN | $75,000.00 |
| SEVEN | September 6, 2024 | Bank #1 | DESTINY MENDEZ | $78,855.42 |

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

## COUNTS EIGHT THROUGH ELEVEN
(Money Laundering)

36.     The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

37.     On or about the following dates, within the Eastern District of New York and elsewhere, the defendants AARON WARREN, TARA DILDY and CHRISTOPHER WALKER did knowingly and intentionally engage in the monetary transactions set forth below, in and effecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and was derived from specified unlawful activity, to wit: wire fraud and bank fraud, contrary to Title 18, United States Code, Sections 1343 and 1344, respectively, knowing that the property involved in such monetary transactions represented the proceeds of some form of unlawful activity:

| Count | Approximate Date | Defendant(s) | Monetary Transaction |
|---|---|---|---|
| EIGHT | January 30, 2024 | TARA DILDY | Withdrawal of $30,000 of fraudulently obtained funds from DILDY's account ending in 6255 |
| NINE | July 26, 2024 | CHRISTOPHER WALKER | Transfer of $30,500 of fraudulently obtained funds from WALKER's account ending in 9327 to his account ending in 1341 |
| TEN | July 26, 2024 | CHRISTOPHER WALKER and AARON WARREN | Transfer of $37,400 of fraudulently obtained funds from WALKER's account ending in 9327 to WARREN's account ending in 1115 |

13

| Count | Approximate Date | Defendant(s) | Monetary Transaction |
|-------|------------------|--------------|----------------------|
| ELEVEN | September 4, 2024 | CHRISTOPHER WALKER | Transfer of $78,000 of fraudulently obtained funds from WALKER's account ending in 4002 to his account ending in 1341 |

(Title 18, United States Code, Sections 1957, 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION AS TO
COUNTS ONE THROUGH SEVEN

38.    The United States hereby gives notice to the defendants that, upon their

conviction of any of the offenses charged in Counts One through Seven, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which

requires any person convicted of such offenses to forfeit any property constituting, or derived

from, proceeds obtained directly or indirectly as a result of such offenses.

39.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other

14

property of the defendants up to the value of the forfeitable property described in this forfeiture

allegation.

(Title 18, United States Code, Sections 982(a)(2)(A) and 982(b)(1); Title 21,

United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS EIGHT THROUGH ELEVEN

40.    The United States hereby gives notice to the defendants charged in

Counts Eight through Eleven that, upon their conviction of such offenses, the government will

seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which

requires any person convicted of such offenses to forfeit any property, real or personal, involved

in such offenses, or any property traceable to such property.

41.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

15

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____s/_____
FOREPERSON

By: *Whitman G.S. Knapp, AUSA*
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK